**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**ANDERSON DIVISION**

Jennifer Gibby,

    Plaintiff,

v.

American Express Company,

    Defendant.

Case No.

COMPLAINT AND DEMAND FOR JURY TRIAL FOR VIOLATIONS OF:

1. Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*; and
2. SCCPA, South Carolina Consumer Protection Act, S.C. Code Ann § 37-5-108
3. SCUTPA, South Carolina Unfair Trade Practices Act, S.C. Code Ann § 395-20
4. Invasion of Privacy - Intrusion Upon Seclusion

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jennifer Gibby ("Plaintiff"), by and through her attorneys, alleges the following against American Express Company ("Defendant" or "American Express"):

## INTRODUCTION

1. Count I of Plaintiff's Complaint is based upon the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment. Among other things, the TCPA prohibits certain unsolicited marketing calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

2. Count II of Plaintiff's Complaint is based upon the South Carolina Consumer Protection Act ("SCCPA"), S.C. Code Ann § 37-5-108, which prohibits unconscionable

conduct in collecting a debt. Unconscionable conduct under the statute includes "caus[ing] a telephone to ring repeatedly during a twenty-four-hour period. . ." S.C. Code Ann § 37-5-108(5)(vii).

3. Count III of Plaintiff's Complaint is based on upon the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann § 395-20, which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce. . ."

4. Count IV of Plaintiff's Complaint is based upon the Invasion of Privacy - Intrusion upon Seclusion, as derived from § 652B of the Restatement (Second) of Torts. § 652B prohibits an intentional intrusion, "physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns… that would be highly offensive to a reasonable person."

## JURISDICTION AND VENUE

5. Jurisdiction of this court arises under 47 U.S.C. § 227 *et seq*. and 28 U.S.C. § 1331.

6. Diversity jurisdiction is established under 28 U.S.C. §1332 as the matter in controversy exceeds $75,000.00, Plaintiff is a citizen of South Carolina, and Defendant is a citizen of New York.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District. Because Defendant transacts business here, personal jurisdiction is established.

## PARTIES

8. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set for the at length herein.

9. Plaintiff is a natural person residing in the city of Walhalla, Oconee County, South Carolina.

10. Defendant is a financial institution that often issues credit cards to consumers with its principal place of business located in 200 Vesey Street, New York, NY and can be served at its registered agent at Corporation Service Company, 28 Liberty St, New York, NY 10005.

11. Defendant is also one who enforces or attempts to enforce an obligation that is owed or alleged to be owed, to a creditor, by a consumer as a result of a consumer transaction.

12. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

13. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set for the at length herein.

14. Several years ago, Plaintiff acquired an American Express Cash Magnet Card from American Express.

15. In or around March 2020, Plaintiff changed her job and was supposed to begin her new job on March 30, 2020.

16. However, before she could begin her new job the COVID-19 pandemic started, and the employer revoked its offer to Plaintiff.

17. Plaintiff was unemployed for three months and was unable to receive unemployment insurance during this time.

18. In July 2020, she started working at her new job but became ill with the COVID-19 virus. The grueling symptoms of the infection left her unable to work for over a month.

19. Plaintiff did not receive unemployment insurance or worker's compensation for the time she was unable to work due to COVID-19.

20. During the time Plaintiff was out of work, Plaintiff used her financial resources to care for herself and her mother, which she has done since Plaintiff's father passed away in September 2019.

21. Because Plaintiff was out of work for approximately four months, Plaintiff struggled financially and was unable to make payments on Defendant's Account.

22. In or around February 2021, American Express began calling Plaintiff on her cellular phone number ending in 7468.

23. Defendant is attempting to collect on one or more alleged debts from Plaintiff which were a result of a consumer credit transaction.

24. In an attempt to hide its true identity and to harass Plaintiff, American Express called from at least the following eight (8) phone numbers: (623) 492-1073, (623) 492-1258, (623) 492-4206, (623) 492-8037, (800) 528-4800, (801) 945-9061, (801) 945-9062, and (801) 945-9067.

25. Upon information and belief, American Express owns and operates these phone numbers.

26. On or about February 26, 2021, at about 8:53 a.m., Plaintiff received a call on her cellular phone from Defendant using the number (800) 528-4800.

27. After answering the call, Plaintiff noticed a short pause before Defendant's representative began speaking, consistent with the use of an automatic dialing system.

28. During this conversation, Plaintiff spoke with a representative; at which point Plaintiff unequivocally revoked consent to be contacted by phone any further. Plaintiff also told the representative about her financial hardships due to COVID-19.

29. Despite revoking consent, Plaintiff continued to be harassed by phone calls from American Express multiple times per day.

30. Between February 26, 2021, and September 31, 2021, American Express willfully called Plaintiff on her cell phone using an automatic telephone dialing system approximately **two hundred (200)** times after Plaintiff had revoked consent.

31. Upon information and belief, each time Plaintiff received a phone call from American Express there was a brief pause prior to speaking with a representative, indicating the use of an automatic telephone dialing system.

32. American Express called Plaintiff up to five (5) times a day; further indicating the use of an automatic telephone dialing system.

33. On the **vast majority** of calls, American Express also left pre-recorded or artificial voice messages for Plaintiff without her consent.

34. During the time of the calls, Plaintiff worked as check-out receptionist at family health care facility and was often interrupted by calls from American Express, causing her work to greatly suffer and causing additional stress during her workday.

35. Plaintiff's boss asked her who kept calling and interrupting her during her work hours and Plaintiff truthfully told him it was American Express, who was the only creditor that refused to stop calling Plaintiff when she requested they stop.

36. In or about the middle of 2021, Plaintiff, who is only 49 years old, also suffered from a Cerebral Vascular Attack ("CVA") and has been unable to work since August 2021.

37. Doctors (psychologists, counselors, neurologists) have told Plaintiff that her seizures are driven by stress. The barrage of calls from American Express caused significant stress to Plaintiff.

38. Doctors have told Plaintiff that because of her seizures and mental incapacities (including pseudo dementia), she will not be able to hold down a job in the future.

39. Plaintiff also has a brain tumor that causes mental incapacities.

40. Plaintiff now can no longer drive and uses a wheelchair to get around.

41. Plaintiff's longtime friend and roommate for the last few years has become her 24-hour caregiver, which Plaintiff's doctors say she requires. Her caregiver has personal knowledge of the stress caused to Plaintiff by the incessant calls from American Express.

42. Without income, Plaintiff can barely afford basic necessities. Her devastating physical and mental issues snowballed quickly in 2021. Her recent application for social security benefits is still pending.

43. Upon information and belief, American Express was well aware of Plaintiff's health and financial hardships due to COVID-19 and her CVA but continued to harass her by calling her multiple times a day even though she revoked her consent to be contacted via phone.

44. Upon information and belief, Defendant called third parties to attempt to collect a debt from Plaintiff.

45. Upon information and belief, Defendant's system "use[s] a random generator to determine the order in which to pick phone numbers from a preproduced list" and "then store[s] those numbers to be dialed at a later time," consistent with footnote 7 in *Facebook, Inc. v. Duguid*, 28 Fla. L. Weekly Fed. S. 721, at *6 n.7 (U.S. 2021).

46. Upon information and belief, Defendant's system used to call Plaintiff has the capacity to store a telephone number using a random or sequential number generator.

47. Upon information and belief, Defendant's system used to call Plaintiff has the capacity to produce a telephone number using a random or sequential number generator.

48. Defendant is familiar with the TCPA, SCCPA, and SCUTPA.

49. Defendant's conduct was not only done willfully but was done with the intention of causing Plaintiff such distress, so as to induce her to pay the debt or pay more than she was able.

50. Defendant's intrusion upon Plaintiff's seclusion was highly offensive to the reasonable person, oppressive, outrageous, and exceeded reasonable collection efforts. Defendant's conduct was especially unreasonable because it called relentlessly shortly after Plaintiff had explained why he could not repay Defendant and on multiple occasions expressly revoked consent to be called.

51. Due to American Express' actions, Plaintiff has suffered extreme emotional distress, invasion of privacy, daily interruption during her job, loss of sleep, and actual damages.

## COUNT I
### (Violations of the TCPA, 47 U.S.C. § 227)

52. Plaintiff incorporates by reference the above factual allegations of this Complaint as though fully stated herein.

53. Defendant violated the TCPA. Defendant's violations include, but are not limited to the following:

    a. Within four years prior to the filing of this action, on multiple occasions,

Defendant violated TCPA 47 U.S.C. § 227 (b)(1)(A)(iii) which states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

b.    Within four years prior to the filing of this action, on multiple occasions, Defendant willfully and/or knowingly contacted Plaintiff using an artificial prerecorded voice or an automatic telephone dialing system and as such, Defendant knowing and/or willfully violated the TCPA.

54.   As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff is entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B). If the Court finds that Defendant knowingly and/or willfully violated the TCPA, Plaintiff is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. § 227(b).

## COUNT II
**(Violations of SCCPA, S.C. Code Ann § 37-5-108(2))**

55.   Plaintiff incorporates herein by reference the factual allegations of this complaint as though fully set forth herein at length.

56.   Defendant violated the SCCPA. Defendant's violations include, but are not limited to, the following:

57. American Express Company violated the SCCPA by engaging in unconscionable conduct in collecting a debt, which includes communicating "with anyone other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the attorney of the creditor or debt collector, unless the consumer or a court of competent jurisdiction has given prior direct permission." S.C. Code Ann § 37-5-108(5)(b)(iv).

58. Defendant violated the SCCPA by engaging in unconscionable conduct in collecting a debt, which includes "caus[ing] a telephone to ring repeatedly during a twenty-four-hour period…" S.C. Code Ann § 37-5-108(5)(b)(vii).

59. Defendant's acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

60. As a result of the foregoing violations of the SCCPA, Defendant is liable to Plaintiff for actual damages up to $1,000 under S.C. Code Ann. § 37-5-108(2).

## COUNT III
### (Violations of SCUTPA, S.C. Code Ann § 39-5-20)

61. Plaintiff incorporates herein by reference the above factual allegations of this complaint as though fully set forth herein at length.

62. Defendant violated the SCUTPA. Defendant's violations include, but are not limited to, the following:

63. Defendant's actions constitute an "unfair. . .practice in the conduct of. . . commerce." Defendant's constant and repeated calls to Plaintiff, after she revoked consent to be called, were intentionally made from at least eight (8) different phone numbers, with the intent to trick her into answering the call.

64. As a result of Defendant's violations of S.C. Code Ann § 39-5-20, Plaintiff is entitled to actual damages, costs, and attorney's fees. See S.C. Code Ann § 39-5-140. If the court finds that the violation was "willful or knowing," the "court shall award" treble damages. *Id*. Furthermore, the statute provides for a civil penalty of up to $5,000.00 per violation of S.C. Code Ann § 39-5-20 to be paid to the State of South Carolina upon the petition of the Attorney General.

## COUNT IV
### (Intrusion Upon Seclusion)

65. Plaintiff incorporates by reference the above factual allegations of this Complaint as though fully stated herein.

66. Restatement of the Law, Second, Torts, § 652(b) defines intrusion upon seclusion as, "One who intentionally intrudes… upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

67. Defendant violated Plaintiff's privacy. Defendant's violations include, but are not limited to, the following:

   a. Defendant intentionally intruded, physically or otherwise, upon Plaintiff's solitude and seclusion by engaging in harassing phone calls in an attempt to collect on an alleged debt despite numerous requests for the calls to cease.

   b. The number and frequency of the telephone calls to Plaintiff by Defendant after numerous requests for the calls to cease constitute an intrusion on Plaintiff's privacy and solitude.

c. Defendant's conduct would be highly offensive to a reasonable person as Plaintiff received calls that often interrupted Plaintiff's work and sleep schedule and caused her physical symptoms and seizures from stress.

d. Defendant's acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

68. By calling Plaintiff approximately two hundred times any reasonable person would be offended by Defendant's conduct.

69. As a result of Defendant's violations of Plaintiff's privacy, Defendant is liable to Plaintiff for actual damages. If the Court finds that the conduct is found to be egregious, Plaintiff may recover punitive damages.

**PRAYER OF RELIEF**

**WHEREFORE**, Plaintiff Jennifer Gibby, respectfully requests judgment be entered against American Express for the following:

70. Statutory damages of $500.00 for each and every negligent violation of the TCPA pursuant to 47 U.S.C. § (b)(3)(B);

71. Statutory damages of $1500.00 for each and every knowing and/or willful violation of the TCPA pursuant to 47 U.S.C. § (b)(3);

72. Actual damages fees pursuant to S.C. Code Ann. § 37-5-108(2);

73. Actual damages, costs, and attorney's fees pursuant to S.C. Code Ann. § 39-5-140;

74. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

75. Any other relief that this Honorable Court deems appropriate.

Respectfully submitted this 21st day of January 2022.

*/s/ Chauntel Bland*
Chauntel Bland, Esq. S.C. Bar #70150
Law Offices of Chauntel Demetrius Bland
463 Regency Park Drive
Columbia, S.C. 29210
E: chauntel.bland@yahoo.com
T: (803)319-6262
*Attorney for Plaintiff*
*Jennifer Gibby*
